We'll call our last case of today, number 16-3335, Kelly D. Superintendent, Graterford SCI et al. Messrs. Weissman and Gaubert May it please the court, Michael Weissman on behalf of Aaron Kelly, I'd like to reserve three minutes for rebuttal. That's fine. I'm impressed by the court's endurance, but what would one expect from such a youthful panel? Even my mother never called me beautiful. So I would like to start with the first constitutional violation, and the core of this Confrontation Clause claim asks whether Aaron Kelly had an adequate opportunity to cross-examine Mason Stanton at the preliminary hearing with respect to his corrupt motive to falsely inculpate Mr. Kelly. That was the opportunity not adequate. I mean, there was plenty of reference to his being there. I mean, he testified as being there on account of his brother, and that was raised. I mean, the opportunity was clearly there. It's not like the issue wasn't raised. I was going to address the prejudice aspects of this first, and I think I can answer that question. The parties and the trial court certainly appreciated that under the existing law, a fair opportunity to cross-examine includes the provision of a full criminal history, as well as any open cases. That flavor is throughout the arguments back and forth about that, and I'd like to analogize, if I could, to a situation where, let us say that a criminal history was provided as a hypothetical. Let us say a criminal history was provided to the defense at the preliminary hearing, but it was either intentionally or accidentally incomplete. Under that theory, under that hypothetical, and under the confrontation law then and now, that would not have been considered a complete disclosure of impeachment material, such that the confrontation could have occurred. That's different from this situation, is it not? What else? There, it was incomplete, so we know what was left out. Here, what are you telling us was left out? What was left out was information, because of Detective Fedder's either inadvertence or intentional untruth, that there was in fact, he was aware that Statton's brother was wanted for murder. But his awareness really isn't all that important, is it? It's the fact that when questioned, Statton said, you know, yes, that's why I was there, etc., etc. Right, but if you look at every juncture in which this issue was decided by the state courts, each court, including the district attorney, in making his arguments, suggested that there was nothing facially withheld. Right, so the district attorney at page SA110 talks about this as the argument that there wasn't a full and complete... But you're not bringing, this is not a Brady claim. You're bringing, this is a confrontation clause claim. Sure. So we're looking at the scope of cross-examination of Statton, where Statton acknowledged that he was there because of an outstanding warrant. Right. And he acknowledged that he was questioned about and understood that he would be in a position to help his brother if he cooperated. Why didn't you get exactly what you would hope on cross-examination? That was available. That was in the preliminary hearing transcript. And even if you got additional impeachment evidence against the officer to use at trial, the officer was there testifying. The point, I think, Judge Krause, is that the lack of the officer's truthful testimony inhibited the impeachment of Statton. But there was a very comprehensive cross-examination of Detective Fedders, right? Oh, at the trial. Look, the issue here, the issue here is once Fedders disclosed the impeachment, right, and the magistrate acknowledged that Judge Hughes, the trial judge, was aware of the impeachment motive, as she put it, I think the magistrate quoted her as saying, I got it. But it's impeachment of Fedders. That's where I'm not understanding your argument. This goes to impeachment of Fedders, who was present and subject to cross-examination at trial. How would it change the cross-examination or provide impeachment material for Statton? All right. I mean, it's very difficult, in retrospect, to know what more counsel could have done. But that's why you have to convince us. No, no. But that shouldn't be my burden because this was, our perspective is, this was an intentional untruth told by the officer. But you have to tell us what's missing. What's missing is getting Mr. Statton back on the stand and saying, okay, the officer is now confirmed. What you already said. Is it that he needed corroboration? And it could have been believed at that point. Why would he lie about the fact that he was brought in on a warrant, you know, related to his brother? I mean, presumably, that's incredible. I think it's pretty clear that what Mr. Statton said at the preliminary hearing was not believed by the preliminary hearing court. But we're looking not at the preliminary hearing result. We are looking to the trial verdict. And if your argument is, as I understand what you said just now, that having Fedders' admissions and change testimony provides a different weight or different credibility that would be given to Fedders' testimony vis-à-vis Statton's testimony, the trial judge had all of that in front of her and was able to make a determination. Exactly. Exactly. That's exactly right. So, again, how do we come back to there being a confrontation clause violation under those circumstances? I think Your Honor said how would it have affected the trial outcome. I think the question is a different one. The question is, had counsel said to Judge Hughes, whoa, wait a minute, Fedder just told us that the impeachment at the preliminary hearing was not full and complete. Using my hypothetical, here's the correct rap sheet of the client. Impeachment of whom? Of Statton. We didn't get a chance to fully impeach Statton, and not just asking him questions, but in the whole. And have Fedders say, yes, that's what happened? Right. Instead of Fedders saying, I don't remember that? Right. If Fedders had confirmed the truth, which is that Statton's brother was wanted for murder, and that's how Mason Statton got involved in all of this, then counsel could have said to the trial judge, we did not have a full and fair opportunity, assuming that this is discovered later at the time of trial, as was the case, could have said to the trial court, you know, this should be precluded under Crawford because we didn't have the full opportunity to cross-examine. But those questions were put to Statton at the preliminary hearing, and he acknowledged the impeachment. Right, and that's what you're saying he should have acknowledged. And he wasn't believed. But again, if we're going to whether the testimony was credible, was believed or not, by the trial judge, the trial judge had Fedders' additional impeachment material available at trial. Exactly, and nobody ever said, Judge Hughes, you should now preclude this under Crawford because we now see that there wasn't a full opportunity to confront Statton. We now have new information from Fedder that bolsters, that supports, that besaw our impeachment of Statton. That goes to the weight to be given their testimony, not the scope of cross-examination of Statton. What different question would have been asked of Statton with Fedder's trial testimony come to light? What different testimony, if the issues are that he was there for a warrant and had a criminal history and that he understood there was an investigation of his brother that he could assist, what else could he have acknowledged or said with that information available to cross-examining counsel? The state trial judge said the appellant or trial court opinion on direct appeal on page 860, appellant pointed to no evidence, information, or documents that were withheld. Not true. What was withheld was the police verify that Statton had a motive to falsely inculpate my client. Which he acknowledged. Which he acknowledged, but which the court didn't accept because the police denied it. That's the point. I think the court is looking at confrontation respectfully in too constrained a way. You know, it's one thing to ask the witness a question. It's another to ask the witness the question, get a favorable answer, and then have it endorsed by the police. The superior court on direct appeal. But that's what you need to do at trial, right? No. This is a question of suppression of a statement or suppression of evidence, I should say, based on a lack of confrontation. This is not a trial weight issue. This is only about whether the Statton information should have been admissible because of a Crawford violation. You're saying that the trial just discounted Statton's testimony that he was brought in on a warrant from his brother because Fetters didn't remember it. Well, he says he didn't remember it. You know, I don't know how he didn't remember it at that time, but remembered it two and a half years later. I think more likely he didn't remember that he may have said something that wasn't true two and a half years earlier. But I just want to make this point. The superior court also said the same thing. If I can find it. They also analyzed this claim, or it was a Crawford claim, a straight up Crawford claim, on direct appeal by saying that, essentially what Judge Hughes said, that the appellant has offered nothing that shows that they didn't have a fair opportunity to bring out the impeachment, to bring out the full impeachment. So the superior court said it, said where is this deficient? And the lawyers, where was the confrontation ability deficient? The lawyers never said, neither Gelman said it, nor did the trial lawyers ever say it, that what was deficient was the untruth told by Fetters. That would have given them a basis for keeping out all of the Fetters' information at trial. I see my time is up. I'm almost up. I'm sorry? You want to address the Wharton claim? I'm sorry? You want to address their claim as to Wharton's testimony? Yes. I was going to actually address the relation back, if I could, just briefly, as to why this claim is timely. I appreciate you addressing the merits on Wharton. Sure. Even if we assume timeliness, given that this was a bench trial and that all but one, from what I can tell of this record, all but one of the references to what Wharton was expected to say, expected to testify, were in the context of pretrial discussions or case management discussions with the judge in her capacity as planner, not as trial lawyer. That's a fair point. How do we have a confrontation clause? Because the additional information that came out that this is an eyewitness who gives the same motive as Staten for the killing is an important unconfronted fact. That should not have been before the fact finder. Isn't it a necessity before a fact finder in a bench trial, and don't we trust trial judges to be able to distinguish what is handled by way of case management, pretrial procedures, and what is admitted into evidence and a proper basis for a verdict? We do, but we have two distinctions here. One is the fact that she gave the same motive as Staten was not any part of any case management necessity for her to have heard that. As far as this judge being able to segregate it, as we would hope a judge would do, we have a judge here who seems to be not well versed in the law at the time. She was very confused, as I pointed out. We made a much bigger deal of this in the district court, but I didn't get COA on that aspect of it. But clearly this judge was very confused about the impact of Crawford and whether it applied at all in Pennsylvania. It's not an exact match, but I think it should give this court some pause as to whether or not this court could have been trusted to segregate. The trial judge said, I wish NeNe had come in and wished as to other witnesses that Staten had not been killed, that other witnesses might appear, but then said, but I'm confined to the record that was created before me and the case law that governs that record. How under those circumstances can we infer that the trial judge, rather than confining herself to the record, went outside of that record to rely on things that were not admitted and that came before her in a case management capacity? Because it's in her opinion that NeNe was an eyewitness who provided the same motive. Where did that come from? That's only because the court either considered the things told to her in a case management setting or the additional information that was provided to the court during the actual trial itself. I think that's why we can't be confident that Judge Hughes did properly segregate. It's in her opinion, it was in the PCRA appellate opinion, it's in the case and it shouldn't have been. I know my time is up. I think you have about three minutes for rebuttal. Okay. We'll get you back. Good morning, Your Honors. May it please the court? John Goldsborough from the Philadelphia District Attorney's Office. My point is really asking this court to find that these two claims are so strong that you can really shoot the moon. Both expanding the equitable Martinez default exception to the time bar male versus Felix situation in relation back to the habeas deadline. I guess a question would be the amended claim one, doesn't it relate back in some way to Mr. Kelly's initial confrontation clause claim? I don't believe that the ineffectiveness claim, of course, as Judge Padova and Magistrate Judge Strawbridge found, I don't believe it does relate back. Well, they both discussed how he was deprived of his right to a full and fair examination of statin. Certainly, in a broad sense, that's true. However, there was no focus on Detective Fedders. There was no focus on withholding anything on Detective Fedders, whether he remembered more closely to the time of the event that the other detectives who were investigating the other homicide told him only a couple of minutes after he started questioning this witness, or perhaps two years later, he was more accurate. There was nothing about that. Why isn't that just a specific example in the realm of the same conduct? In male v. Felix, the Supreme Court gave examples of untimely amended claims that would relate back, including talking about Brady and the example of an amended petition alleging the government's failure to disclose a particular report. Why isn't this just like that? It could be, except that here the specific allegation is the trial counsel were ineffective at trial two years later, failing to, mid-bench trial, ask Judge Hughes to reconsider her pretrial ruling that there was a full and fair opportunity for cross-examination. And that's at a different time. And it's based on different facts, too. So if we're talking about time and type, I think we're talking about an ineffectiveness claim versus a confrontation clause claim. And certainly if they were exactly the same claim, perhaps that would be a closer case, as in that McEwen case. They don't have to be exactly the same. They have to relate to the same operative said and clear facts, right? Sure, but the same time as well. And I think we're talking about two years later at trial versus at the preliminary hearing itself. But it's not just amendment. I mean, we're also talking about the default of these claims. So we're talking also about extending the reasons for the Martinez default in the equitable tolling context if we're talking about both of these claims. We're talking about Martinez. We're talking about Mealy v. Felix. And we're also talking about extending a Holland equitable tolling to this so-called Martinez conflict that seems to be percolating around the country. But the claims under it, from my perspective, and thank you, Your Honor, for reading that, Judge Krause, that quote from the trial judge, which I have here as well. I think it says it all with regard to that. As your colleague points out, the judge did go on to say a bit more when it came time to writing an opinion for the appeals court. I'm not sure that what he represented, she wrote, is what she, in fact, wrote. And I have the page. It's A-70 here. And the first thing she does is she quotes Mason Statton's statement as read into the record with the page numbers from the notes of testimony simply saying that this was in Mason Statton's statement that there was a woman named Nay-Nay. That's at the top of the page. And then down at the bottom of the page, she doesn't say that Nay-Nay gave another statement. She says from the administrative discussions that Your Honor referred to that after being identified as a witness, she expressed reluctance to come forward. There was a material witness warrant. And then as Roger King specifically put on the record, he had requested a bench warrant for her because he wanted to make it clear that we did our best to obtain the presence and the testimony of this eyewitness. But what's written here at A-70, this is in the context of responding to a motion to set aside the verdict for lack of sufficient evidence. In other words, it seems that in writing up the opinion for review by the appeals court, the trial judge is identifying as evidence that factors into what was sufficient to uphold the verdict. The fact that a woman from the women's court identified as Nay-Nay was observed by Statton running toward Erin yelling, what are you doing? And then including this portion of Statton's testimony that was not, as far as I can tell, even part of the preliminary hearing record. It was in that his statement was admitted as evidence in the preliminary hearing of C-1. The statement in whole was admitted as evidence? Yes, in whole. His entire statement was admitted both at the trial and at the preliminary hearing. Now, because counsel did not see fit to question him about the other 16 questions, as my opponent points out, he's saying, well, it's unfair to use that, so he wants the statement redacted to not have any reference to Nay-Nay. But Nay-Nay is in the statement. There are three questions about Nay-Nay in the statement. That's why I put the statement in the supplemental appendix, so that your honors could see this is what was in evidence both at the preliminary hearing and at trial. Maybe you could point to where, not now, but perhaps before we conclude today, where there is the admission of the full statement at the preliminary hearing. I didn't see that. In fact, I believe I have those references. I apologize, Your Honor, not right in front of me right here, but I do have them here. Here they are. So the preliminary hearing being January 20, 2004, starting at S.A. 84. C1 is marked at page 24, which is S.A. 89. That is the statement. And then C2 is the photo array. That's at page 27. I understand it was marked. No, no, and then it was omitted at page 39. So I just want it at page 39, which is S.A. 93, C1 and C2. Thank you. Move for admission, so order. So, Your Honors, I agree with you entirely. I really, as far as the merits of the claims go, I have very little more to say. I mean, Stanton is the one who brought up the whole point of coming forward to help his brother and that the police told him that. How much further south could he have gone? I think what we're talking about in that claim is credibility, additional impeachment, and it doesn't go to full and fair opportunity for cross-examination. I think it goes, perhaps, to full and fair opportunity for cross-examination of Detective Fedders, but he appeared at trial. So that's really not what we're talking about here. Could you touch on the Edward Boltonian claim? Certainly, Your Honors. The problem is the Pickard Counsel continued to represent Kelly during at least the initial part of the federal proceedings. So he couldn't have raised several claims that he otherwise could have raised under Martinez. Is that correct? It's not that he couldn't have. It's that there's some unseemliness, perhaps. But we do have the federal defenders actually doing this currently in a case of mine, Alexander Keaton. That's before Magistrate Judge Lorette. They themselves have raised a claim that they were ineffective in failing to raise, when they were PCRA counsel and they are continuing as federal habeas counsel, failing to raise a claim that's defaulted and have asked for supplemental Martinez counsel, conflict counsel, to be appointed for the purposes of that particular claim. In this situation, counsel was privately retained. Specifically within the control of Mr. Kelly. Certainly, but could have raised such a claim had he wanted to. I'm simply saying that it's not impossible. But we can't expect counsel to do that or for the client to bear the burden or consequences if counsel fails to identify and advocate for their own ineffective assistance. Sir? Although, as I say, it's not an uncommon thing to occur. And if there were some, I noticed that my opponent dropped a footnote, talking about perhaps if there was some sort of a warning in the form or some sort of an administrative option here to be taken, that that might be appropriate. But I don't think it constitutes extraordinary circumstances that prevent one from filing on time, despite reasonable diligence. And that's the standard, as the Supreme Court's made clear. And doesn't it matter that it was not beyond his control? Exactly. That's the monomony point. It was within his control. He certainly could have done it. And we have, again, many, many. He raised the he. Many, well, right. Many represented defendants send in letters and petitions seeking to add claims that their counsel had refused to add. And this is another situation that I wanted to mention, because it's on remand from this court in my capital case of Roger Judge, which is now before Judge Joyner. Roger Judge himself does not want to be represented by the federal defenders, the Federal Community Defender Office, which Mr. Watson used to work for, and has never wanted that. And he has never wanted us to do what we did, which is come to an agreement that his case is no longer capital. He wants his case to be capital so he can have as many claims as possible. And he wants there to be a different attorney for him to assert the claims that he wants to assert against the defenders. But going back to Mr. Kelly's case, how can we expect Mr. Kelly, while he is represented by counsel and being advised by counsel, who, let's assume, has a conflict, how can we say that it is within his control to raise this claim he doesn't know about and where he's being advised to the contrary by conflicted counsel? Well, first of all, I'm not sure I accept the premise that there is a conflict. But in any event, all I'm saying here for equitable tolling purposes is that I don't think that that rises to the level of extraordinary circumstances that prevents one from filing. And I think it would blow a huge hole in the time bar if this court were to recognize such an exception, just as it would blow a huge hole in Coleman beyond Martinez for this court to recognize this kind of equitable default Martinez exception to the Neely v. Felix relation back. So it seems to me we're sort of importing other doctrines into this that would be inappropriate. But, as I say, if the court wanted to adopt some sort of administrative warning or something on the form saying that you might be precluded from raising certain claims if you had the same counsel in PCRA and Federal Habeas, which is not, by the way, extraordinary. Another reason that it's not extraordinary circumstances for equitable tolling purposes. I did point out that Mr. Wiseman has done it and many other attorneys have done it, representing both PCRA and Federal Habeas, and they continue to do so post-Martinez. But if the court were to put such a warning on the form, I think that might be appropriate. Well, Mr. Coney didn't have the benefit of such a form. I understand. So is that a reason here we should, if we contemplated any such requirement going forward, to deem the claims here timely? Again, I don't think this is extraordinary. I don't think that it prevented him from filing. I don't think that he's shown reasonable diligence. I don't think this was out of his control. These are the standards for equitable tolling. Any further questions? I want to go back to the Wharton claim because I appreciate your pointing us to the full statement coming in. But I'm not sure at the end of the day that really answers the question of providing the necessary assurance that the trial judge did not rely on Wharton's reported testimony or initial availability in considering what constituted sufficient evidence to support the verdict. Even if it's being recounted in her opinion in the context of referring to or even quoting from parts of Statton's original statement, doesn't that indicate that the trial judge, in rendering her verdict, had in mind inadmissible testimony? Because there are those three questions about Nene. In the statement, in Mason Statton's statement, he says that Nene witnessed this incident, that she was there, that she was screaming at him, why are you shooting him, and gives information about her location, where she lives, how he knows her. I don't think it's at all inappropriate. And the fact that it was placed on the record that we tried our best to get her in, I don't think was inappropriate either. It may not have been, but that's clearly double hearsay and raises significant Confrontation Clause concerns, doesn't it? So it seems to me that trial counsel were well aware of this as an issue and said repeatedly on the record, we believe Your Honor is fair. We believe Your Honor will put aside any improper evidence. We know we have the option to go down the hall to Judge Temin to consider these issues. This wasn't the only issue where we might not want the court to hear it. And under other circumstances, we would do that if it were a jury trial. But we believe Your Honor is fair and will not consider this. That's fine as far as it goes, but then we have her written opinion explaining what she considers sufficient evidence to support the verdict going up to the appellate court. Why doesn't that create sufficient concern or doubt about the basis for the verdict and whether it was limited to admissible evidence for relief to be granted here? Simply because, well, setting aside the time-barred and procedurally defaulted nature of the claim, the fact that amendment was denied and the district court didn't abuse its discretion in doing that, if one looks at the notes of testimony references in the trial court's opinion, one will find that it's legitimately in the record, this evidence. It's there. It's not inadmissible evidence. It's part of the statement. And the statement was read in full into the record. And those are the pages that the judge refers to when she's referring to Nainé. Judge Kras mentioned hearsay. I mean, the fact that he reported she was there is not hearsay. Presumably her statement could be an excited utterance or something of that kind. So maybe it's not entirely hearsay? That's correct. And this is not a reference to her statement. That was turned over in discovery. But that's not in evidence, and she makes no reference to it. She's referring to Ms. Instatt in the statement. Any further questions? Thank you very much. Mr. Weissman. Discussing the equitable tolling question, the way I think about it is that if this court thinks either of these constitutional violations have merit, then Mr. Gelpin was laboring under a conflict. Because in order to raise these meritorious claims, he would have had to confess his own ineffectiveness. The case I submitted recently in Supplemental Authority, a 20-year jailer, as well as the Christensen case cited in my main brief, very clearly say, and I think we all know this intuitively, just because some crazy lawyers at the Capitol Habeas Unit, I said it facetiously, I used that word there, are willing to confess their own ineffectiveness, does not mean that lawyers are expected to confess their own ineffectiveness. And to the contrary, they are expected. It presents a conflict as the authorities I've submitted to the court show. I think Mr. Goldsboro is missing a point here. The statement was admitted. That's true. The statin statement was admitted. But two-thirds of the statement, including the portions with respect to Nene, were never the subject of either direct examination by the Commonwealth at the preliminary hearing or on cross-examination at the preliminary hearing. They are double hearsay. They are unconfronted. No one's ever asked that man a question about it. We have no idea what his basis for knowing this is, for knowing about Nene. We know nothing about it. And this is a case where I understand to some extent why Mr. Gellman was focused on due process, which to my mind means fairness. Do something. And this man is serving a sentence of life imprisonment, and he's never had a live witness say he did it. I mean, that's problematic. And when you look at it from that perspective, the fact that the trial court is including references to Nene, in her opinion, is really troubling. That, you know, what one could say is, ah, it's just a little bit of information. But there's not hardly anything in this case. There's no competent evidence against my client. And so I think that looking at it from that perspective, it assumes a much greater role. I just want to get back to the first constitutional violation ever so quickly. On page 860 of my appendix, and we have dueling appendices here, the Superior Court in ruling on the Confrontation Clause claim says, quote, Appellant has pointed to no evidence, information, or documents which were withheld by the Commonwealth or otherwise explain why he could not cross-examine Mr. Statton fully. And I think that language is important because, once again, the way the state courts analyze the Statton question is, what didn't counsel have that he needed to have to bring out this corrupt motive? Right? That's what confrontation is about. What didn't they have? Well, what they didn't have is the officer's truthful testimony that, oh, yeah, his brother was involved in this and his brother was wanted, giving him a big fat motive to falsely incriminate my client. That's troubling. It's a troubling case. And I certainly appreciate the court's close attention. Thank you. Thank you very much. Thank you to both counsel for bringing that up before us, well argued. And we'll take the matter under advisement and adjourn for the day. Court is adjourned. Thank you.